## GRENADA BANK *v.* WARING *et al.**

(Division B.    April 21, 1924.)

[99 So. 681.    No. 22831.]

1. INJUNCTION. *Subsequent action to enjoin prosecution of another action in same court cannot be maintained unless relief to which complainant entitled impossible in prior action.*

   A subsequent action cannot be maintained to enjoin the prosecution of another action in the same court unless it clearly appears that the relief to which the complainant in the latter action is entitled cannot be obtained in the prior action.

2. FRAUDULENT CONVEYANCES. *Attacking creditor has statutory lien on property, and right to foreclosure thereof in same proceeding in which established.*

   Under section 553, Code of 1906 (section 313, Hemingway's Code), which provides that a creditor in a bill filed for the purpose of enforcing the right conferred thereby shall have a lien on the property described in the bill from the filing thereof, except as against *bona-fide* purchasers before the service of process on the defendant, the attacking creditor is given a statutory lien on the property conveyed, and the right to a foreclosure thereof in the same proceeding in which it is established.

3. INJUNCTION. *Creditor's bill attacking conveyance as fraudulent and for amount due cannot be enjoined by subsequent action where rights of defendant in original action can be fully protected by cross-bill.*

   The prosecution of a creditor's bill attacking a conveyance as fraudulent, and seeking a decree for the amount due, cannot be enjoined by a subsequent action, where all the equitable rights of the defendant in the original action, growing out of the issues involved therein, can be fully protected by means of a cross-bill in the original action.

---

*Headnote 1.   Injunctions, 32 C. J., section 126;   2.   Fraudulent Conveyances, 27 C. J., section 828;   3.   Injunctions, 32 C. J., section 126.

APPEAL from chancery court of Humphreys county. HON. E. N. THOMAS, Chancellor.

Proceeding between the Grenada Bank and James A. Waring and others. From an order overruling a motion to dissolve a preliminary injunction, the former appeals. Reversed, and decree rendered.

*R. B. Campbell* and *Green & Green,* for appellant.

I. *Injunction Will Not Be Granted To Enjoin a Suit Pending in the Same Court, and Especially Where the Suit Enjoined is to Enforce a Statutory Right by the Statutory Remedy Enjoined.*

The relief is determinable under section 313, Hemingway's Code. When the bank filed this bill to avoid the fraudulent conveyances, not only of the notes, but of the stock and of the land, thereby they were given, under the express terms of the statute, the same rights as if "complainants had judgments and execution thereon returned 'no property found.'" The statute further provided expressly, "the creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against *bona-fide* purchasers before the service of process upon the defendant in such case."

Thus the law itself gives to the defendant, the bank, precisely the same rights as the bank claims in virtue of the pledge under the note, and, in this case, the bank having filed a bill to avoid as fraudulent the transfer of this property described, this lien would have been co-equal with any right obtainable in virtue of the agreement to pledge. *Insurance Company* v. *Ligon,* 59 Miss. 316.

This cause was pending in the chancery court, and it is beyond the power of a chancery court to enjoin itself from proceeding with a previously instituted suit in which not only the relief sought to be enjoined was grantable, but other and further relief was shown to be entitled. The bank could have relief only as a complainant, as creditor, and to enjoin that suit would be

to deny effect to the statute and a resort to the remedy thereby created.

II. *No Basis for Enjoining a Suit in the Chancery Court Where Full Relief May be Had in the Cause Initially Brought.*

There was suit pending in equity between the same parties, in the same court, and comes the question in such a proceeding, can the court enjoin other proceedings in the same court between the same parties whereby in the second proceeding there is substantially but a rehash of the grounds brought before the court in the first suit as a basis for relief?

We admit normally the right of a court of equity to issue an injunction, but the reason therefor is the inadequacy of the remedy at law, and where there is a proceeding in equity in the same court, then the right to enjoin does not exist. 22 Cyc. 810.

All that appellee need have done would have been to file a cross-bill and to have had the court in this original cause issue such relief as might have been requisite as in the form of a receivership or whatever other equitable remedy might seem proper. 14 R. C. L., 405; *Redd* v. *Bandford et al.*, 54 Ga. 123; *Pond* v. *Harwood*, 139 N. Y. 118; *Harrison* v. *Littlefield*, 124 S. W. 212; *Wilson* v. *Baker*, 64 Cal. 475. See, also, *Ray* v. *Williams Phosphate Co.*, 52 So. 589; 16 Am. & Eng. Ency. of Law (2nd Ed.), 372. It is a maxim of the law that there should be an end of litigation. Let the law make good its boast by dismissing this suit, otherwise it cannot verify its declaration that it abhors litigation. See *Peyton* v. *Vardaman*, 103 Miss. 172.

*Everett & Forman* and *Moody & Williams*, for appellees.

This cause is argued in appellant's brief, as if the case had been tried on its merits. We desire to call the court's attention to the fact that what was heard was a prelim-

inary motion to dissolve the injunction on *ex parte* affidavits, and the cross-examination of Mr. McClintock in person. The principles governing a chancellor in passing upon a preliminary motion to dissolve, were clearly announced by this court recently in *Citizens Bank & Trust Co. of Belzoni* v. *Harpeth National Bank of Franklin, et al.*, 120 Miss. 595, 82 So. 329.

It will be noted that the testimony, as to every feature of the case, resting as it does upon the affidavit, is sharply conflicting; that there are named other parties in the case besides the appellant, as defendants to the original bill below; that discovery is asked of the business of the Arkansas-Texas Company for worthless stock of which company the note in controversy here was sued on; that such information was easily accessible to J. W. McClintock, one of the directors in that concern, and director in the appellant bank, and one of the parties to the bill below; that although this information was accessible and could have been gotten by McClintock, up to the time of the hearing of this motion, it was not furnished; and that although McClintock knew that he was to be cross-examined as to the transaction, wherein he claims he sold the twenty-five thousand dollar note, in controversy, to the Grenada Bank, still he does not bring with him to court the check by which he claims payment was made to him for this note, nor any of the correspondence had between him and the Grenada Bank in reference to said note, and it is expressly admitted that the Arkansas-Texas Company was violating the law in selling its stock in the state of Mississippi, not having qualified under the Blue Sky Law. Under the facts disclosed by this record, it was certainly the duty of the court to refuse to dissolve the injunction, and let the case be tried on its merits on final hearing.

Points I and II, argued by counsel for appellant, are predicated upon their contention that relief could have been had to the suit originally brought by the Grenada

Bank against appellee Waring, and that might be true but for the fact that it was necessary for Waring, in order to get the full relief, to which he was entitled, to bring in other parties to the suit, and it is settled law in Mississippi that a party cannot by cross-bill, bring in additional parties defendant; that if he does so his bill is demurrable. *Lander* v. *Ogden;* 31 Miss. 332; *Bishop* v. *Miller,* 48 Miss. 364; *Wright* v. *Frank,* 61 Miss. 32.

Counsel contended that all Waring need have done would have been to file a cross-bill in the original suit. There would be more weight to that argument if it were not for the well-settled rule in Mississippi that you cannot bring in additional parties by cross-bill. It was necessary to have the parties in court who were made parties defendant, and this could not have been done in any other manner than was done in this case.

It is stated in 22 Cyc. at page 810, that: "Wherever complainant's rights cannot be fully protected in the other suit it will be enjoined." It was certainly necessary to have McClintock in as a party defendant to this suit, even if counsel's contention should be correct that the Grenada Bank is entitled to collect the twenty-five thousand dollar note. It is certainly true that Waring would be entitled to a decree to compel them to reimburse him for whatever amount he might have to pay out on the note. All the parties are before the court, and while some had not answered at the time of the hearing of this motion, still it is impossible to get the whole case tried, and the whole matter disposed of on one hearing, if the case should be heard on its merits. To dissolve this injunction would be to deny appellee any relief whatever.

The argument is made that if the debts are not collected, part of them will be lost, but such is not the record here. The notes are secured by first mortgages on real estate and will be collectible at the end of the litigation, but we desire to call the court's attention to the fact that since the hearing of this motion, there have been two

terms of the chancery court of Humphreys County, at either one of which this case could have been heard and finally determined on its merits, long prior to the present time, but for the fact of the prosecuting of this appeal from a decree overruling a preliminary motion to dissolve the injunction. ·

We respectfully submit that this was a matter which addressed itself to the discretion of the court, the court heard the proof and rightly concluded that the case should be heard on its merits, and his finding should not · be disturbed. 14 R. C. L., page 464.

Argued orally by *Garner W. Green,* for appellant, and *J. L. Williams* and *Frank E. Everett,* for appellees.

Cook, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Humphreys county overruling a motion to dissolve a preliminary injunction.

The facts out of which this litigation arose as shown by the bill of complaint and answers, which by agreement were considered as the affidavits of the respective parties, and also by the oral testimony offered at the hearing of the motion to dissolve the injunction, are substantially as follows: During the year 1919 appellee James A. Waring sold a large tract of land located in Humphreys county, Miss., taking as a part of the purchase price therefor a series of promissory notes amounting, in the aggregate, to more than thirty thousand dollars. On the 16th day of March, 1920, Waring borrowed the sum of eight thousand six hundred forty dollars from the Belzoni branch of the Grenada Bank, executing his note therefor, payable to the Grenada Bank or bearer on November 15, 1920, and pledged as collateral to secure the payment of the note a list of notes which had been executed for the deferred payments of land previously sold by him, amounting to thirty-one thousand

four hundred fifty-six dollars and sixty-six cents. The note executed by Waring to the Grenada Bank contained printed on the face thereof, among other provisions, the following:

"Having deposited or pledged as collateral security for the payment of this or any other obligation of mine to said bank the following: List of notes totaling thirty-one thousand four hundred fifty-six dollars and sixty-six cents. Now, in the event of the nonpayment of this note at maturity, the holders hereof are hereby invested with full authority to use, transfer, hypothecate, sell, or convey the said property, or any part thereof, or any substitute therefor, or any addition thereto, or to cause the same to be done, at public or private sale, at the option of the holders hereof, with or without notice or demand of any kind, which is hereby expressly waived, at such place and on such terms as the said holders hereof may deem best. And the holders of this note are authorized to purchase said collaterals when sold for their protection. And the proceeds of such sale, transfer or hypothecation, shall be applied to the payment of this note, together with all protests, damages, interest, cost and charges due or incurred by reason of its nonpayment, or in the execution of this power. Also, a commission of two and one-half per cent. on the gross amount of said collaterals sold. The surplus, if any, after the payment of this note, with all expenses and charges, shall be paid to the payer hereof, or at the election of the holders be paid on any other obligation of the payer hereof, whether as principal debtor or otherwise, held by the holders hereof."

Waring had been a customer of the Belzoni branch of the Grenada Bank for a number of years, and the negotiations for this loan were between Waring and J. W. McClintock, vice president of the Grenada Bank, in active charge of the Belzoni branch. On December 23, 1920, this note was renewed by Waring, and additional security of warehouse receipts for thirty-eight bales of cotton

were put up with the new note, which matured in sixty days.

In June, 1920, the said J. W. McClintock and J. M. Powell, a director of the Belzoni branch of the Grenada Bank, owned a large amount of the capital stock of the Arkansas-Texas Company, an oil company domiciled at Little Rock, Ark., and they employed one H. F. Lucas to sell this stock. On June 15, 1920, Lucas sold to Waring stock in this company, for which Waring executed his note for twenty-five thousand dollars payable in six months after date. This note, which was payable to bearer, was delivered to McClintock, the stock issued to Waring, and afterwards the note was transferred by McClintock to the parent bank at Grenada, the transfer being negotiated with J. T. Thomas, president of the Grenada Bank. A few days after the first sale of stock to Waring, Lucas sold him additional stock in the same oil company, for which he executed his note for fifteen thousand dollars, the evidence offered at the trial showing that this note was still held by McClintock at that time.

In December, 1920, Waring conveyed to Jemima Coaps, who is his sister, all of his property, including the notes previously pledged as collateral to secure the payment of his note to the Belzoni branch of the Grenada Bank. When this note matured Waring went to the bank at Belzoni and tendered the full amount due thereon, and demanded the surrender of the note and the return of his securities. The bank declined to deliver the securities, claiming the right to hold them as security for the twenty-five thousand dollars by virtue of the pledge thereof as collateral security for the payment of the note or any other obligation of the maker to said bank.

On February 11, 1921, the Grenada Bank, as holder of the two notes, one for eight thousand three hundred seventy-five dollars and the other for twenty-five thousand dollars, filed an original bill in the chancery court

of Humphreys county against J. A. Waring and Jemima Coaps, averring the ownership of said Waring notes and the refusal to pay the same, and further averring that with the intent to hinder, delay, and defraud his creditors, and particularly complainant, the defendant Waring had conveyed all his land, notes and property, particularly described, to his sister, Jemima Coaps, for a recited consideration of love and affection; the prayer of the bill being for a decree for the amount due, and an injunction against the defendant Jemima Coaps restraining her from selling, transferring, or hypothecating said notes and real estate and other personal property, and from placing any of the notes beyond the jurisdiction of the court, and that the conveyances from the defendant Waring to the defendant Jemima Coaps be held to be fraudulent and void, and for general relief.

On March 5, 1921, the original bill in this cause was filed, and on April 19, 1921, there was filed the amended and supplemental bill, on which the motion to dissolve the injunction was heard. This bill makes the Grenada Bank and its Belzoni branch and J. W. McClintock, J. M. Powell, S. R. McClintock, J. M. Cashin, J. T. Thomas, the Arkansas-Texas Oil Company and all its officers and directors parties defendant, and avers in detail the facts hereinbefore stated. It further sets forth in great detail the alleged dealings of J. W. McClintock and J. M. Powell, directors, and J. T. Thomas, president, of the Grenada Bank, in certain oil stock, and in the organization of a certain oil company which was merged with the Arkansas-Texas Oil Company, whereby they acquired a large amount of the capital stock of the latter company. It further avers that the complainant, J. A. Waring, had great confidence in the superior business ability of J. W. McClintock, and that for many years he had advised with him in reference to all his business transactions; that the said McClintock, Powell, and Thomas, knowing that the complainant relied largely on the ad-

vice and counsel of J. W. McClintock and J. M. Powell, devised a scheme whereby they might acquire the property of the complainant, Waring, by selling to him on credit their worthless oil stock and taking his notes for the same, and afterwards passing them through the bank of Belzoni into the parent bank, the Grenada Bank, and setting up the claim that the said Grenada Bank was an innocent purchaser for value of said notes; that in furtherance of this scheme to unload their worthless oil stock on complainant, and thereby acquire his property without any consideration, they employed one H. F. Lucas, an oil stock salesman, and sent him to complainant to sell their stock; that the complainant had no knowledge of the fact that the stock which Lucas proposed to sell him was the property of McClintock and Powell, and that he was induced to purchase a large amount of this stock by reason of false and fraudulent representations as to the value thereof made by Lucas, and by McClintock and Powell when he sought their advice as to the value of the stock and the advisability of purchasing the same, the alleged fraudulent representations made by each of them being set forth in detail; that the said Lucas and McClintock advised the complainant that McClintock had invested large sums of money, amounting to eighty thousand or eighty-five thousand dollars, in said stock, and the dividends on the stock would more than pay the purchase price thereof and discharge any notes he might execute therefor before they came due; that upon this advice and counsel he executed the notes payable to himself or bearer, and they were delivered to the said McClintock, and charged that, although the stock delivered to him was issued by the Arkansas-Texas Oil Company, it was in reality the individual stock of J. W. McClintock, J. M. Powell, and J. T. Thomas. The bill further averred that the said Grenada Bank, through its officers, knew that the representations made to him were falsely, knowingly, and fraud-

ulently made for the purpose of selling to complainant worthless oil stock belonging to such officers of the bank, for the purpose of recouping their losses previously sustained; that at the time the stock was sold to him neither the Arkansas-Texas Oil Company nor McClintock, Powell, and Thomas had complied with the Blue Sky Law of the state of Mississippi, being chapter 97, Laws of 1916, and amendments thereto, and for this reason the contract for the sale of the stock was void, and the notes executed therefor are void; that complainant had received no dividends from said stock, except the sum of three hundred dollars, and that the stock was worthless. The bill of complaint further charged that, notwithstanding the false and fraudulent representations made to the complaint, Waring, at the time the notes were executed by him, the said Grenada Bank was claiming to be an innocent purchaser thereof for value without notice and before maturity, and that it had filed a bill in the chancery court of Humphreys county, being cause No. 217 on the docket of that court, seeking thereby to have certain conveyances executed by complainant, Waring, to his sister, Jemima Coaps, declared to be fraudulent and void, and seeking to recover twenty-five thousand dollars from the complainant on one of the said notes executed by Waring; and it further charged that the Grenada Bank, and its branch bank at Belzoni, through its officers, had actual knowledge of the false and fraudulent representations made to complainant, Waring, by the said Lucas and by themselves, and that said bank was not an innocent purchaser of said note, but was a party to the fraudulent scheme to obtain the notes from complainant, and its refusal to accept payment of the original loan eight thousand six hundred dollars and surrender the complainant's securities was a part of this scheme to acquire complainant's property. The prayer of the bill was for a cancellation of the contract of sale of oil stock and the notes executed in payment therefor; for a discovery by the

Arkansas-Texas Oil Company of all its dealing in oil stock in the state of Mississippi, and especially with the said McClintock, Powell, and Thomas; for an injunction restraining the bank of Grenada and all its officers from selling or disposing of any securities belonging to complainant; and for an injunction restraining and enjoining the said bank of Grenada and its officers and agents from the further prosecution of the cause styled *"Grenada Bank* v. *James A. Waring et al.,"* and being cause No. 217 on the docket of the Humphreys county chancery court.

Process for the nonresident defendants was not executed, and they entered no appearance. The resident defendants all filed answers, answering in detail every averment of the bill of complaint, and specifically denying every averment of fraud or unfair dealing, denying that the stock sold to Waring was worthless, or that it was not worth the amount agreed to be paid therefor at the time of the sale, and denying that any false or fraudulent representation was made or authorized to be made by any officer of the Grenada Bank, and denying that in the purchase of the stock the complainant, Waring, relied upon a representation or statement made by McClintock or Powell. It is unnecessary to set out further details of the answer.

The testimony offered at the hearing of the motion to dissolve the injunction, which consisted of the bill of complaint and answers, which by agreement were offered as the affidavits of the respective parties, and also the affidavit of H. F. Lucas, and the cross-examination of J. W. McClintock, is conflicting throughout, and especially as to the value of the stock sold to Waring and the amount of the dividends received by him therefrom, and as to the representations made to Waring and all allegations of fraud contained in the bill of complaint.

The appellant presents numerous grounds for a reversal of the decree of the court below, but we deem it

necessary to consider only two of these grounds, which may be summarized as follows: First, a court of equity will not enjoin a suit pending in its own court where the suit enjoined is predicated upon a statutory jurisdiction in which the remedy can only be enforced in the manner provided by the statute; and, second, a court of equity will not enjoin a suit pending in its own court where full relief may be had in the cause initially brought.

Section 553, Code of 1906 (section 313, Hemingway's Code), provides:

"The [chancery] court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned 'No property found.' Upon such a bill a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such writs may be issued in other cases, and subject to such proceedings and provisions thereafter as are applicable in other cases of such writs; and the chancellor of the proper district shall have power and authority to grant orders for receivers, in same manner as if the creditor had recovered judgment and had execution returned 'No property found.' The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against *bona-fide* purchasers before the service of process upon the defendant in such bill."

Seeking to avail of the right and remedy afforded by this statute, the appellant, as the holder of two Waring notes, one for eight thousand three hundred seventy-five dollars and the other for twenty-five thousand dollars, filed its bill of complaint against J. A. Waring and Je-

mima Coaps, averring the ownership of these notes, and that the defendant Waring had conveyed all his prop- erty to the defendant Coaps, and that such conveyances were fraudulent, and made for the purpose of hindering, delaying, and defrauding his creditors, especially the complainant, and prayed that these conveyances be held fraudulent and void, the property subjected to the de- mands of complainant, and that a decree be entered for the amount due. The effect of section 553, Code of 1906, which provides that a creditor in a bill filed for the pur- pose of enforcing the right conferred thereby shall have a lien on the property described in the bill from the fil- ing thereof, except as against *bona-fide* purchasers be- fore the service of process on the defendant, is to give to the attacking creditor a statutory lien on the property conveyed, and a foreclosure thereof in the same proceed- ing in which it is established. *Insurance Co.* v. *Ligon,* 59 Miss. 316.

The right given by this statute to the appellant,- the bank, is a valuable one, since by a resort to the remedy thereby created, if it can establish the averments of its bill, it is given not only the right to enforce the notes held by it, but also a lien on land and personal property to guarantee the payment of its decree, and, without deciding whether or not equity will ever enjoin a suit pending in the same court where the suit sought to be enjoined is predicated on a statutory jurisdiction in which the remedy can only be enforced in the manner provided by the statute, we think it is clear that it will not do so in the present case, for the reason that any relief to which the complainant would be entitled un- der the bill in the present case can be obtained by means of a cross-bill in the original action.

It is the general rule that a subsequent action can- not be maintained to enjoin the prosecution of another action in the same court unless it clearly appears that the relief to which the complainant in the later action

is entitled cannot be obtained in the prior action. 22
Cyc. 810; 14 R. C. L. 405; *Pond* v. *Harwood*, 139 N.
Y. 118, 34 N. E. 768; *Savage* v. *Allen,* 54 N. Y. 458;
*Redd* v. *Bandford et al.,* 54 Ga. 123; *Harrison* v. *Little-
field,* 57 Tex. Civ. App. 617, 124 S. W. 212; *Wilson* v.
*Baker,* 64 Cal. 475, 2 Pac. 253. The appellee concedes
that this is the general rule, but contends that it is not
controlling here, for the reason that under the prac-
tice in this state and the decisions of this court, ad-
ditional parties defendant cannot be brought into the
suit by cross-bill, and that other parties to the suit
are necessary in order that the full relief to which
the appellee Waring is entitled may be granted. Con-
ceding for the purpose of this decision that additional
parties to the suit cannot be brought in by cross-bill,
even where the cross-bill seeks affirmative relief, we
do not think any additional parties are necessary for
the protection of all the equitable rights of the de-
fendant Waring growing out of the issues involved in
the original suit.

The twenty-five thousand dollars Waring note is the
basis of the original suit wherein the Grenada Bank
and J. A. Waring and Jemima Coaps are parties, and
if the defense here sought to be made the basis of a
cancellation of this note were therein interposed it
would be just as effectual as a defense and as effica-
cious in defeating liability, and upon proper applica-
tion in the original suit the court would have full
power to make all orders necessary for the preserva-
tion of the *status quo* of the property and securities in-
volved. The prayer of the bill discloses that no relief
whatever is sought against the defendants J. M. Cash-
ing, J. M. Powell, S. R. McClintock, and J. T. Thomas,
who are merely attorneys, agents, and officers of the
Grenada Bank, and as such subject to the directions
of the bank and any restraining orders of the court
against it. It is clearly established by this record that

J. W. McClintock has no interest in the twenty-five
thousand dollar note executed under one transaction,
and the bank has no interest in the fifteen thousand
dollar note which was executed at a different time, un-
der different circumstances, and as a part of an en-
tirely different transaction. Until past due this note
was still in the hands of the original holder, and we
do not think he is a necessary party for the full pro-
tection of any equitable rights of the defendants grow-
ing out of the original transaction and the suit to en-
force collection of the note executed as a part thereof.
As to the nonresident defendants only discovery is
sought, and if it be conceded that such discovery would
be competent against the codefendants, no appearance
has been entered by them, and since no personal ju-
risdiction of them has been obtained no relief can be
granted against them. The final prayer of the bill
is for a personal decree for damages against the
Grenada Bank, and no other party is necessary to the
granting of this relief.

It follows from the views herein expressed that the
decree of the court below be reversed, and decree en-
tered here dissolving the injunction and dismissing the
bill.

*Reversed and decree here for appellant.*